# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action Number:

**HEIDI JEWKES**, Individually and on behalf of all others similarly situated,

**ADELINE ROYBAL**, Individually,

**NANCY BURGESS**, Individually,

**NATASHA SWENSON**, Individually,

**NICOLE MONTOYA**, Individually,

**NICOLE MORRIS**, Individually,

**MALINDA HONEA**, Individually,

**ROBYN RICHARDS**, Individually,

**ANGEL BENCOMO**, Individually,

**BERNADETTE GALLEGOS**, Individually,

Plaintiffs,

v.

**COLORADO DEPARTMENT OF CORRECTIONS**,

**GRW CORPORATION**, a foreign corporation doing business in the State of Colorado,

**ARISTEDES ZAVARAS**, Executive Director of the Colorado Department of Corrections,
in his individual and official capacity,

**JOE ORTIZ**, former Executive Director of the Colorado Department of Corrections,
in his individual and official capacity,

**ROBERT CANTWELL**, Director of Prisons of the Colorado Department of Corrections,
in his individual and official capacity,

**GARY GOLDER,** former Director of Prisons of the Colorado Department of Corrections,
in his individual and official capacity,

**GIL WALKER**, Chief Executive Officer of GRW Corporation,
in his individual and official capacity,

**COLORADO DEPARTMENT OF CORRECTIONS – WARDENS**,
(Including but not limited to):

**DONA ZAVISLAN,** Warden of the Denver Women's Correctional Facility,
in her individual and official capacity;

**TRAVIS TRANI,** former Warden of the Denver Women's Correctional Facility,
in his individual and official capacity;

**MARK BROADDUS**, former Warden of the Denver Women's Correctional Facility,
in his individual and official capacity;

**NOBEL WALLACE**, former Warden of Denver Women's Correctional Facility,
in his individual and official capacity;

**COLORADO DEPARTMENT OF CORRECTIONS – CORRECTIONAL OFFICERS**,
(Including but not limited to):

**C.O. SHACKELTON**, Correctional Officer at the Denver Women's Correctional Facility,
in his individual and official capacity;

**C.O.MASTERS**, Correctional Officer at the Denver Women's Correctional Facility,
in his individual and official capacity;

**C.O. TORRES,** Correctional Officer at the Denver Women's Correctional Facility,
in his individual and official capacity;

**C.O. HOWARD**, Correctional Officer at the Brush Correctional Facility,
in his individual and official capacity;

Defendants.

---

### CLASS ACTION COMPLAINT FOR CLAIMS PURSUANT TO 42 U.S.C. § 1983, FOR CLAIMS PURSUANT TO 18 U.S.C. § 1595, FOR INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

---

Plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Irwin & Boesen, P.C., bring this class action against the Defendants for claims pursuant to 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments (including claims for cruel and unusual punishment, invasion of bodily integrity, failure to protect, danger creation, and failure to train and supervise), for claims pursuant to 18 U.S.C. § 1595, and for injunctive relief. Plaintiffs assert the claims herein based upon their personal knowledge of the Defendants' acts and otherwise upon information and belief and respectfully state as follows:

## I.    INTRODUCTION

1.      Plaintiffs are either current or former inmates of the Defendant Colorado Department of Corrections ("DOC").

2.      Plaintiffs are victims of a prison system that looks the other way as guards openly treat inmates as objects of their own sexual gratification.

3.      Plaintiffs suffered, and continue to suffer, injuries from being the victims of an inherently coercive sexual relationship while in the custody of the DOC.

4.      Plaintiffs were deprived of their rights under the United States Constitution as a result of Defendants' knowing and deliberate indifference to the serious risk of harm and injury to Plaintiffs and other inmates.

5.      Plaintiffs' injuries were caused by widespread failures on the part of Defendants to address known pervasive sexual abuse by guards at DOC facilities throughout the State of Colorado.

6.      This is a civil action for prospective injunctive, declaratory, and other equitable relief, as well as damages, pursuant to 42 U.S.C. § 1983 and 18 U.S.C. § 1595 for Defendants' violation of Plaintiffs' rights under the United States Constitution.

3

## II.    JURISDICTION AND VENUE

7.      This action arises under the Constitution and laws of the United States, and is
brought pursuant to Title 42 U.S.C. § 1983 and 18 U.S.C. § 1595. Jurisdiction is conferred on
this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiffs' claims for attorney
fees and costs is conferred by 42 U.S.C. § 1988.

8.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All
of the events alleged herein occurred within the State of Colorado, and all of the parties were
residents of the State at the time of the events giving rise to this litigation.

## III.    PARTIES

9.      Plaintiff Heidi Jewkes is and has been, at all times referred to herein, a resident of
and domiciled in the State of Colorado. During the relevant time periods, Ms. Jewkes was
housed as an inmate at the Denver Women's Correctional Facility ("DWCF"), a facility of the
Colorado Department of Corrections.

10.     Plaintiff Adeline Roybal is and has been, at all times referred to herein, a resident
of and domiciled in the State of Colorado. During the relevant time periods, Ms. Roybal was
housed as an inmate at DWCF.

11.     Plaintiff Nancy Burgess is and has been, at all times referred to herein, a resident
of and domiciled in the State of Colorado. During the relevant time periods, Ms. Burgess was
housed as an inmate at DWCF.

12.     Plaintiff Natasha Swenson is and has been, at all times referred to herein, a
resident of and domiciled in the State of Colorado. During the relevant time periods, Ms.
Swenson was housed as an inmate at DWCF.

13.     Plaintiff Nicole Montoya is and has been, at all times referred to herein, a resident of and domiciled in the State of Colorado. During the relevant time periods, Ms. Montoya was housed as an inmate at DWCF.

14.     Plaintiff Nicole D. Morris is and has been, at all times referred to herein, a resident of and domiciled in the State of Colorado. During the relevant time periods, Ms. Morris was housed as an inmate at DWCF.

15.     Plaintiff Malinda Honea is and has been, at all times referred to herein, a resident of and domiciled in the State of Colorado. During the relevant time periods, Ms. Honea was housed as an inmate at DWCF.

16.     Plaintiff Robyn Richards is and has been, at all times referred to herein, a resident of and domiciled in the State of Colorado. During the relevant time periods, Ms. Richards was housed as an inmate at DWCF.

17.     Plaintiff Angel Bencomo is and has been, at all times referred to herein, a resident of and domiciled in the State of Colorado. During the relevant time periods, Ms. Bencomo was housed as an inmate at DWCF.

18.     Plaintiff Bernadette Gallegos is and has been, at all times referred to herein, a resident of and domiciled in the State of Colorado. During the relevant time periods, Ms. Gallegos was housed as an inmate at Brush Correctional Facility, a facility of the Colorado Department of Corrections.

19.     Defendant Colorado Department of Corrections is an agency of the State of Colorado, authorized pursuant to Title 17 of the Colorado Revised Statute, and responsible for twenty adult prisons and a youthful offender system.

5

20.     Defendant Aristedes Zavaras is a citizen of the United States and a resident of

Colorado and is acting under color of state law in his capacity as the Executive Director of the

Colorado Department of Corrections and pursuant to Colorado state statute, is an official who

manages, supervises, and controls the correctional institutions operated by the State of Colorado,

including DWCF, and who is responsible for developing policies and procedures with respect to

the operation of the Colorado Department of Corrections.

21.     Defendant Joe Ortiz is a citizen of the United States and resident of Colorado and

was acting under color of state law in his capacity as the former Executive Director of the

Colorado Department of Corrections and pursuant to Colorado state statute, was an official who

managed, supervised, and controlled the correctional institutions operated by the State of

Colorado, including DWCF, and who was responsible for developing policies and procedures

with respect to the operation of the Colorado Department of Corrections during the relevant time

periods.

22.     Defendant Robert Cantwell is a citizen of the United States and resident of

Colorado and is acting under color of state law in his capacity as the Director of Prisons

overseeing the operations of Colorado state prison facilities and pursuant to Colorado state

statute, is an official who manages, supervises, and controls the correctional institutions operated

by the State of Colorado, including DWCF, and who is responsible for developing policies and

procedures with respect to the operation of the Colorado Department of Corrections during the

relevant time periods.

23.     Defendant Gary Golder is a citizen of the United States and resident of Colorado

and was acting under color of state law in his capacity as the former Director of Prisons

overseeing the operations of Colorado state prison facilities and pursuant to Colorado state

6

statute, was an official who managed, supervised, and controlled the correctional institutions operated by the State of Colorado, including DWCF, and who was responsible for developing policies and procedures with respect to the operation of the Colorado Department of Corrections during the relevant time periods.

24.    Defendant Dona Zavislan is a citizen of the United States and a resident of Colorado and is acting under color of state law in her capacity as the Warden of the DWCF, and is the official in charge of all activities connected with the DWCF, including but not limited to establishing procedures for the operations of DWCF on a day-to-day basis, the hiring of prison staff, ensuring that all DWCF employees are properly trained, establishing procedures for movement of DWCF employees within the facility, and establishing internal security procedures.

25.    Defendant Travis Trani is a citizen of the United States and a resident of Colorado and was acting under color of state law in his capacity as the former Warden of the DWCF, and was the official in charge of all activities connected with the DWCF, including but not limited to establishing procedures for the operations of DWCF on a day-to-day basis, the hiring of prison staff, ensuring that all DWCF employees are properly trained, establishing procedures for movement of DWCF employees within the facility, and establishing internal security procedures.

26.    Defendant Mark A. Broaddus is a citizen of the United States and a resident of Colorado and was acting under color of state law in his capacity as the former Warden of the DWCF, and was the official in charge of all activities connected with the DWCF, including but not limited to establishing procedures for the operations of DWCF on a day-to-day basis, the hiring of prison staff, ensuring that all DWCF employees are properly trained, establishing procedures for movement of DWCF employees within the facility, and establishing internal security procedures.

7

27.     Defendant Nobel Wallace is a citizen of the United States and a resident of Colorado and was acting under color of state law in his capacity as the former Warden of the DWCF, and was the official in charge of all activities connected with the DWCF, including but not limited to establishing procedures for the operations of DWCF on a day-to-day basis, the hiring of prison staff, ensuring that all DWCF employees are properly trained, establishing procedures for movement of DWCF employees within the facility, and establishing internal security procedures.

28.     Defendant Shackelton is a citizen of the United States and, at all times relevant to the subject matter of this litigation, was a resident of Colorado and was acting under color of state law in his capacity as a Correctional Officer at the DWCF.

29.     Defendant Masters is a citizen of the United States and, at all times relevant to the subject matter of this litigation, was a resident of Colorado and was acting under color of state law in his capacity as a Correctional Officer at the DWCF.

30.     Defendant Torres is a citizen of the United States and, at all times relevant to the subject matter of this litigation, was a resident of Colorado and was acting under color of state law in his capacity as a Correctional Officer at the DWCF.

31.     Defendant Howard is a citizen of the United States and, at all times relevant to the subject matter of this litigation, was a resident of Colorado and was acting under color of state law in his capacity as a Correctional Officer at the Brush Correctional Facility.

32.     Defendant GRW Corporation is a foreign corporation, authorized to conduct business in Colorado.  Upon information and belief, GRW Corporation was authorized by agreement or statutory authority to assume the custody and control of female inmates housed at Brush Correctional Facility and was acting under color of state law in its capacity as the operator

8

of Brush Correctional Facility during the relevant time periods, was in charge of all activities connected with Brush, including but not limited to establishing procedures for the operation of Brush on a day-to-day basis, the hiring of prison staff, ensuring that all Brush employees are properly trained, establishing procedures for movement of Brush employees within the facility, and establishing internal security procedures.

33.    Defendant Gil Walker is a citizen of the United States and a resident of Colorado and is acting under color of state law in his capacity as the Chief Executive Officer of GRW Corporation, and is the official who manages, supervises, and controls the correctional institutions operated by GRW, including Brush Correctional Facility, and who is responsible for developing policies and procedures with respect to the operation of Brush Correctional Facility. Upon information and belief, Defendant Walker was authorized to assume the custody and control of female inmates housed at Brush Correctional Facility and was acting under color of state law in his capacity as the CEO of GRW during the relevant time periods, was in charge of all activities connected with Brush, including but not limited to establishing procedures for the operation of Brush on a day-to-day basis, the hiring of prison staff, ensuring that all Brush employees are properly trained, establishing procedures for movement of Brush employees within the facility, and establishing internal security procedures.

34.    Defendants Zavaras, Ortiz, Golder, Zavislan, Trani, Broaddus, Wallace, and Walker are hereinafter referred to as "Supervisory Defendants."

## IV.    CLASS ALLEGATIONS

35.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the **numerosity**, **commonality**, **typicality**, **adequacy**, **predominance**, and **superiority** requirements of Rule 23.

36.    Excluded from the Class are: the State of Colorado; Colorado Department of Corrections; directors and employees of the State of Colorado and the Colorado Department of Corrections; including, but not limited to, Wardens and Correctional Officers; GRW Corporation; officers, directors and employees of GRW Corporation; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

37.    **Numerosity** – The members of the Class are so numerous that joinder of such persons in one action is impractical. The Class consists of potentially thousands of members, the identity of whom is within the knowledge of and can be ascertained and identified through the Colorado Department of Correction records and/or through notice posted in the Colorado Department of Correction facilities and through media resources available to the general population of the State of Colorado. The Class members may be reasonably determined and the Class is manageable.

38.    **Common Factual and Legal Issues** – There are questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members. The common legal and factual issues include, but are not limited to, the following:

a.    Whether it was, and continues to be, a common and pervasive practice for DOC personnel to perpetrate sexual abuse against DOC inmates.

b.    Whether Defendants had actual knowledge of ongoing and pervasive sexual misconduct and abuse perpetrated by DOC prison officials against inmates housed at DWCF and other facilities.

c.       Whether Defendants knew that Plaintiffs and the Class were, and continue
to be, at serious risk of being sexually assaulted by prison personnel employed by the
DOC.

d.       Whether Defendants failed and continue to fail to provide Plaintiffs and
the Class humane conditions of confinement by knowingly, voluntarily, recklessly and
with willful disregard to the inmates' personal safety allowing them to be sexually
assaulted and raped.

e.       Whether Defendants failed to institute appropriate hiring practices in order
to ensure inmate safety.

f.       Whether Defendants knowingly, recklessly and intentionally disregarded
and continue to disregard obvious serious risks to Plaintiffs and the Class posed by
widespread and pervasive sexual abuse of inmates housed at DWCF and other DOC
facilities by prison personnel in the following ways:

      i.       failing to take timely substantive remedial actions to address the known,
ongoing, pervasive problem of sexual abuse by Correctional Officers and
other prison personnel against DOC inmates;

      ii.      failing to properly hire, train, and/or supervise prison personnel in order to
prevent and/or address known pervasive sexual abuse of DOC inmates by
correctional officers and other prison personnel;

      iii.     continuing to employ numerous DWCF prison personnel, as well as
personnel in other DOC facilities, in positions that allow them
unsupervised access to DOC inmates, in spite of Supervisory Defendants'
knowledge that these officials were and/or are sexual predators; and

11

iv.    failing to maintain a proper video surveillance system in all locations where inmates are present.

g.    Whether Defendants' conduct amounts to deliberate indifference to the rights of Plaintiffs and the Class housed at DWCF and other facilities with whom prison personnel inevitably come into contact and is so grossly reckless that future misconduct is virtually inevitable.

h.    Whether, given the widespread and pervasive sexual abuse by prison personnel of DOC inmates, unless Supervisory Defendants are enjoined from their policy, pattern and/or practice of disregarding the obvious serious risk of pervasive sexual assault by prison personnel against Plaintiffs and the Class, these inmates will suffer irreparable injury.

i.    Whether the actions or inactions of Defendants' resulted in violation of Plaintiffs' and the Class' rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments.

j.    Whether the actions or inactions of Defendants' violated Plaintiffs' and the Class' constitutionally protected right to bodily integrity.

k.    Whether the Defendants' failed to protect Plaintiffs and the Class from pervasive sexual assaults by prison personnel in the following ways:

i.    by employing Defendant Correctional Officers and other prison personnel in positions that allowed them unsupervised access to DOC inmates, with, and in spite of, the knowledge that prison personnel were and are sexual predators;

12

      ii.    by failing to take any substantive remedial actions to address the known, ongoing, pervasive problem of sexual abuse by prison personnel against inmates;

      iii.    by failing to properly hire, train, and/or supervise prison personnel to prevent and/or address pervasive sexual assault by Defendant Correctional Officers and other prison personnel against inmates, known to Supervisory Defendants; and,

      iv.    by failing to maintain a proper video surveillance system in all locations where DOC inmates are present.

    l.    Whether Defendants created the danger that led to Defendant Correctional Officers' sexual assault of Plaintiffs or the Class and/or increased Plaintiffs' or the Class' vulnerability to the rape or sexual assault.

    m.    Whether Defendants failed to properly train and supervise the staff beneath them regarding policy and procedure for maintaining the health, safety and wellbeing of the Plainitffs and the Class in the State of Colorado in the care and custody of the DOC.

    n.    Whether Defendants perpetrated or knowingly benefited from participation in a venture which that person knew or should have known has engaged in an act in violation of Title 18 U.S.C. Part I, Chapter 77, et seq., and the Defendants perpetrated or knowingly benefited from participation in a venture which they knew or should have known provided or obtained the aggravated sexual abuse of Plaintiffs and the Class.

13

o.     Whether Plaintiffs and the Class are entitled to prospective injunctive and declaratory relief and other appropriate equitable relief, actual economic damages, compensatory damages, including, but not limited to, those for future pecuniary losses, physical and emotional pain, suffering, inconvenience, humiliation, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, punitive damages for all claims allowed by law in an amount to be determined at trial, and attorney's fees.

39.     **Typicality of Plaintiffs** – Plaintiffs' claims are typical of the claims of other Class members, in that, they arise out of the same wrongful actions, inactions, policies, procedures, and practices of the Defendants. The claims of the representative Plaintiffs are also typical of the claims of the Class, in that, the representative Plaintiffs, like all Class members, were sexually assaulted by Correctional Officers while incarcerated in the Colorado Department of Corrections facilities. The representative Plaintiffs, like all Class members, have suffered injury and damage by the Defendants' actions, inactions, policies, procedures, and practices, and will continue to suffer injury and damage in the future without injunctive relief. Furthermore, the factual basis of the Defendants' conduct is common to all Class members, and represents a common thread of sexual abuse resulting in injury and damage to all members of the Class.

40.     **Adequacy of Representation** – Plaintiffs and their attorneys will fairly and adequately protect the interests of the Class. Plaintiffs have no interests antagonistic to the Class. Plaintiffs have retained Class counsel experienced in the prosecution of complex litigation, including complex class actions, and such counsel will fully, fairly, and adequately represent the Plaintiffs and the Class.

41.     **Predominance and Superiority** – This class action is appropriate for certification under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the

members of the Class predominate over questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class members is impracticable. Should individual Class members be required to bring separate actions, the courts would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action is fully manageable and will provide unitary adjudication, economies of scale, and comprehensive supervision by a single Court.

## V.    FACTUAL ALLEGATIONS

### A.    COMMON FACTUAL ALLEGATIONS:

42.    During the relevant time periods, Plaintiffs were in the care, custody, and control of the Colorado Department of Corrections.

43.    While in the care, custody, and control of the Colorado Department of Corrections, each Plaintiff was under the supervision of Correctional Officers who could exercise control over virtually every aspect of Plaintiffs' lives.

44.    While in the care, custody, and control of the Colorado Department of Corrections, each Plaintiff was approached by one or more Correctional Officers and coerced into engaging in sexual acts on DOC premises.

45.    In order to coerce Plaintiffs to submit to their sexual desires, Correctional Officers made certain promises or threats to gain compliance.

46.    Feeling that they had no choice under the circumstances, Plaintiffs were forced to engage on sexual acts.

15

47.     Given the profound disparity in power and authority between Plaintiffs and these Correctional Officers, the sexual contacts were inherently involuntary.

48.     As a direct and proximate result of being sexually assaulted and raped by these Correctional Officers, Plaintiffs have suffered serious personal injury and damage.

49.     As a result of this unlawful sexual contact, Plaintiffs continue to be victimized as they suffer retaliation from other staff members, including officers at DWCF, who treat them worse than other inmates who did not report crimes perpetrated on them by Correctional Officers.

50.     Unlawful sexual contact with inmates has been known to the Supervisory Defendants prior to these incidents.

51.     The Supervisory Defendants had actual knowledge that Correctional Officers were engaged in sexual misconduct with inmates prior to each incident involving the named Plaintiffs.

52.     By the Defendant Colorado Department of Correction's own statistics, in the Colorado prison system, the rape of female prisoners by Correctional Officers occurs at the rate of one or two *founded* cases of rape per month (at least 12-24 women per year, or at least 48-96 women raped by Correctional Officers over the timespan served on average by a woman incarcerated in Colorado). These statistics appear to indicate that – *based on founded cases alone* – a woman incarcerated in the Colorado prison system has a better than 1% - 2% chance of being raped by a custodial prison staff officer while incarcerated. These numbers do not include all reported cases or cases against male inmates, but only *founded* cases against female inmates documented by the Colorado Department of Corrections.

16

53.     During the relevant time periods, and up to and including the present day, it was,
and continues to be, a common and pervasive practice for DOC personnel to perpetrate sexual
abuse against DOC inmates.

54.     Prison officials at DOC facilities, including DWCF and Brush, facilitate
communications between other prison officials and inmates under their control, in order to
promote and encourage coercive, sexual relationships.   Such overt acts by DOC personnel
demonstrate that DOC officials are aware that sexual relationships with inmates are tolerated
within the DOC and among its employees.

55.     Notwithstanding the fact that prison guards overtly engage in sexual relationships
with inmates, prison officials failed to take either prompt or effective action to remedy the
problem.

56.     During the relevant time periods, and up to and including the present day, the
Office of the Warden of DWCF, the Office of the Executive Director of the Colorado
Department of Corrections, and the Office of the Director of Prisons had actual knowledge of
ongoing and pervasive sexual misconduct and abuse perpetrated by DOC prison officials against
inmates housed at DWCF and other facilities, through receipt of letters, grievances, kites, formal
complaints, and civil suits filed by numerous inmates at the DOC facilities regarding widespread
sexual abuse of inmates by prison officials.

57.     The Supervisory Defendants knew that Plaintiffs and other DOC inmates were,
and continue to be, at serious risk of being sexually assaulted by prison personnel employed by
the DOC.

58.     The Supervisory Defendants failed and continue to fail to provide Plaintiffs and
other DOC inmates humane conditions of confinement by knowingly, voluntarily, recklessly and

with willful disregard to the inmates' personal safety allowing them to be sexually assaulted and raped.

59.    The Supervisory Defendants failed to institute appropriate hiring practices in order to ensure inmate safety.

60.    The Supervisory Defendants knowingly, recklessly and intentionally disregarded and continue to disregard obvious serious risks to Plaintiffs and other inmates posed by widespread and pervasive sexual abuse of inmates housed at DWCF and other facilities by prison personnel in the following ways:

> b.    failing to take timely substantive remedial actions to address the known, ongoing, pervasive problem of sexual abuse by Correctional Officers and other prison personnel against DOC inmates;

> c.    failing to properly hire, train, and/or supervise prison personnel in order to prevent and/or address known pervasive sexual abuse of DOC inmates by Correctional Officers and other prison personnel;

> d.    continuing to employ numerous DWCF prison personnel, as well as personnel in other DOC facilities, in positions that allow them unsupervised access to DOC inmates, in spite of the Supervisory Defendants' knowledge that these officials were and/or are sexual predators; and,

> e.    failing to maintain a proper video surveillance system in all locations where DOC inmates are present.

61.    This conduct shocks the conscience and amounts to deliberate indifference to the rights of the inmates housed at DWCF and other facilities with whom prison personnel inevitably

18

come into contact with DOC inmates and is so grossly reckless that future misconduct is virtually inevitable.

62.    These actions and inactions by all Defendants were made possible by an overt culture of sexual abuse by Correctional Officers against DOC inmates.

63.    Given the widespread and pervasive sexual abuse by prison personnel of DOC inmates, unless the Supervisory Defendants are enjoined from their policy, pattern and/or practice of disregarding the obvious serious risk of pervasive sexual assault by prison personnel against Plaintiffs and other DOC inmates, these inmates will suffer irreparable injury.

## B.    FACTUAL ALLEGATIONS RELATED TO HEIDI JEWKES AND ADELINE ROYBAL:

64.    On or about June 17, 2009, Plaintiffs Jewkes and Roybal were incarcerated at the Denver Women's Correctional Facility in Denver, Colorado.

65.    On or about June 17, 2009, Defendant Shackelton was working as a Correctional Officer at the DWCF.

66.    On or about June 17, 2009, Defendant Shackelton approached Ms. Jewkes and Ms. Roybal and coerced them into engaging in sexual acts with him in a closet.

67.    In order to coerce Ms. Jewkes and Ms. Roybal to submit to his sexual desires, Defendant Shackelton threatened to have them written up and/or moved to a less comfortable housing unit.

68.    Feeling that she had no real choice under the circumstances, both Ms. Jewkes and Ms. Roybal reluctantly acquiesced to Defendant Shackelton's demands for oral sex.

69.    Due directly to being forced to engage in oral sex by Defendant Shackelton, Ms. Jewkes and Ms. Roybal both continue to be victimized as they suffer retaliation from other staff members, including officers at the Denver Women's Correctional Facility.

19

70.     Defendant Shackelton has engaged in other abusive sex acts with female inmates.

71.     Upon information and belief, Defendant Shackelton's abusive and coercive sexual contact with female inmates was well known, not only among other inmates, but other officers as well.

C.     **FACTUAL ALLEGATIONS RELATED TO NANCY BURGESS:**

72.     On or about January 15, 2009, Plaintiff Burgess was incarcerated at the Denver Women's Correctional Facility in Denver, Colorado.

73.     On or about January 15, 2009, Defendant Shackelton was working as a Correctional Officer at the DWCF.

74.     On or about January 15, 2009, Defendant Shackelton approached Ms. Burgess and coerced her into engaging in sexual acts with him in her cell.

75.     In order to coerce Ms. Roybal to submit to his sexual desires, Defendant Shackelton prevented her from leaving her cell and threatened to have her written up for an infraction.

76.     Feeling that she had no real choice under the circumstances, Ms. Burgess reluctantly acquiesced to Defendant Shackelton's demands for oral sex.

77.     Defendant Shackelton has engaged in other abusive sex acts with female inmates.

78.     Upon information and belief, Defendant Shackelton's abusive and coercive sexual contact with female inmates was well known, not only among other inmates, but other officers as well.

D.     **FACTUAL ALLEGATIONS RELATED TO NATASHA SWENSON:**

79.     On or about June 20, 2009, Plaintiff Swenson was incarcerated at the Denver Women's Correctional Facility in Denver, Colorado.

80.     On or about June 20, 2009, Defendant Shackelton was working as a Correctional Officer at the DWCF.

20

81.    On or about June 20, 2009, Defendant Shackelton approached Ms. Swenson and coerced her into engaging in sexual acts with him in a chemical closet.

82.    In order to coerce Ms. Swenson to submit to his sexual desires, Defendant Shackelton threatened to have her written up for an infraction.

83.    Feeling that she had no real choice under the circumstances, Ms. Swenson reluctantly acquiesced to Defendant Shackelton's demands, including oral sex and his forced penetration of her vagina with his fingers.

84.    On a separate occasion during that same week, Defendant Shackelton again approached Ms. Swenson and threatened to tell her husband about their prior sexual encounter.

85.    Again feeling that she had no real choice under the circumstances, Ms. Swenson reluctantly acquiesced to his demands, including oral sex and his attempted rape of her.

86.    Defendant Shackelton has engaged in other abusive sex acts with female inmates.

87.    Upon information and belief, Defendant Shackelton's abusive and coercive sexual contact with female inmates was well known, not only among other inmates, but other officers as well.

### E.    FACTUAL ALLEGATIONS RELATED TO NICOLE MONTOYA:

88.    In June 2009, Plaintiff Montoya was incarcerated at the Denver Women's Correctional Facility in Denver, Colorado.

89.    In June 2009, Defendant Shackelton was working as a Correctional Officer at the DWCF.

90.    In June 2009, Defendant Shackelton approached Ms. Montoya and coerced her into engaging in sexual acts with him in a chemical closet.

91.    In order to coerce Ms. Montoya to submit to his sexual desires, Defendant Shackelton threatened to have her written up for an infraction.

92.     Feeling that she had no real choice under the circumstances, Ms. Montoya reluctantly acquiesced to Defendant Shackelton's demands, including fondling his penis and his fondling of her breast.

93.     On a separate occasion during that same week, Defendant Shackelton again approached Ms. Montoya and threatened her with an infraction.

94.     Again feeling that she had no real choice under the circumstances, Ms. Montoya reluctantly acquiesced to his demand that she expose herself to him.

95.     Defendant Shackelton has engaged in other abusive sex acts with female inmates.

96.     Upon information and belief, Defendant Shackelton's abusive and coercive sexual contact with female inmates was well known, not only among other inmates, but other officers as well.

F.      **FACTUAL ALLEGATIONS RELATED TO NICOLE MORRIS:**

97.     On or about April 1, 2009, Plaintiff Morris was incarcerated at the Denver Women's Correctional Facility in Denver, Colorado.

98.     On or about April 1, 2009, Defendant Shackelton was working as a Correctional Officer at the DWCF.

99.     On or about April 1, 2009, Defendant Shackelton approached Ms. Morris and coerced her into engaging in sexual acts with him in a chemical closet.

100.    In order to coerce Ms. Morris to submit to his sexual desires, Defendant Shackelton threatened to have her written up for an infraction.

101.    Feeling that she had no real choice under the circumstances, Ms. Morris reluctantly acquiesced to Defendant Shackelton's demands, including oral sex.

102.    Defendant Shackelton has engaged in other abusive sex acts with female inmates.

22

103.    Upon information and belief, Defendant Shackelton's abusive and coercive sexual contact with female inmates was well known, not only among other inmates, but other officers as well.

**G.    FACTUAL ALLEGATIONS RELATED TO MALINDA HONEA:**

104.    In May 2009, Plaintiff Honea was incarcerated at the Denver Women's Correctional Facility in Denver, Colorado.

105.    In May 2009, Defendant Shackelton was working as a Correctional Officer at the DWCF.

106.    In May 2009, Defendant Shackelton approached Ms. Honea and coerced her into engaging in sexual acts with him in a chemical closet.

107.    In order to coerce Ms. Honea to submit to his sexual desires, Defendant Shackelton threatened to have her written up for an infraction.

108.    Feeling that she had no real choice under the circumstances, Ms. Honea reluctantly acquiesced to Defendant Shackelton's demands, including oral sex.

109.    Upon information and belief, Defendant Shackelton has engaged in other abusive sex acts with female inmates.

110.    Upon information and belief, Defendant Shackelton's abusive and coercive sexual contact with female inmates was well known, not only among other inmates, but other officers as well.

**H.    FACTUAL ALLEGATIONS RELATED TO ROBYN RICHARDS:**

111.    On or about September 4, 2009, Plaintiff Richards was incarcerated at the Denver Women's Correctional Facility in Denver, Colorado.

112.    On or about September 4, 2009, Defendant Masters was working as a Correctional Officer at the DWCF.

23

113.    On or about September 4, 2009, Defendant Torres was working as a Correctional
Officer at the DWCF.

114.    On or about September 4, 2009, Defendants Masters and Torres approached Ms.
Richards and ordered her to undergo a strip search.

115.    At that time, Ms. Richards was menstruating.

116.    During the strip search, Defendants Masters and Torres ordered Ms. Richards to
spread her legs and spread her vaginal walls for them to conduct a visual inspection.

117.    In order to coerce Ms. Richards to submit to such an invasive search, Defendants
Masters and Torres threatened Ms. Richards with pepper spray.

118.    Feeling that she had no real choice under the circumstances, Ms. Richards reluctantly
acquiesced to their demands and exposed herself to the Defendants and other officers in the room.

119.    Upon information and belief, Defendants Masters and Torres have engaged in other
abusive sex acts with female inmates.

120.    Upon information and belief, Defendants Masters and Torres' abusive and coercive
contact with female inmates was well known, not only among other inmates, but other officers as
well.

I.    **FACTUAL ALLEGATIONS RELATED TO ANGEL BENCOMO:**

121.    In January 2009, Plaintiff Bencomo was incarcerated at the Denver Women's
Correctional Facility in Denver, Colorado.

122.    In January 2009, Plaintiff Bencomo was approached by a DWCF staff member
and coerced into engaging in sexual acts.

123.    In order to coerce Ms. Bencomo to submit to his sexual desires, this staff member
promised that he would "take care of her". Inherent in this promise was also the converse: if she
refused to submit to his sexual desires, he could and would make life very difficult for her.

24

124.    Ms. Bencomo reluctantly acquiesced to his demands and engaged in sexual acts with this staff member.

125.    Due directly to being forced to engage in sexual acts by a DOC staff member, Ms. Bencomo continues to be victimized as she suffers retaliation from other staff members, including officers at the Denver Women's Correctional Facility.

J.    **FACTUAL ALLEGATIONS RELATED TO BERNADETTE GALLEGOS:**

126.    At all times relevant, Plaintiff Gallegos was incarcerated at the Brush Correctional Facility.

127.    At all times relevant, Defendant GRW owned and operated the Brush Correctional Facility pursuant to an agreement with the Colorado Department of Corrections.

128.    At all times relevant, Defendant Howard was employed by Defendant GRW as a correctional officer at the Brush Correctional Facility.

129.    On four occasions, Plaintiff Gallegos was approached by Defendant Howard and coerced into engaging in sexual acts.

130.    In order to coerce Ms. Gallegos to submit to his sexual desires, Defendant Howard used his power and position over her.

131.    Ms. Gallegos reluctantly acquiesced to Defendant Howard's demands and engaged in sexual acts with Defendant Howard.

132.    Upon information and belief, Defendant Howard engaged in other abusive sex acts with female inmates.

133.    Upon information and belief, Defendant Howard's abusive and coercive contact with female inmates was well known, not only among other inmates, but other officers as well.

## VI.    STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Eighth Amendment and Fourteenth Amendment Violations
### (Cruel and Unusual Punishment – Against All Defendants)

134.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

135.    Defendants were acting under color of state law in their actions and inactions at all times relevant to this action.

136.    Defendant Correctional Officers knowingly inflicted unnecessary and wanton pain upon Plaintiffs by their coercive sex acts in violation of Plaintiffs' rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments.

137.    By engaging in inherently coercive and repeated sexual acts with Plaintiffs, Defendant Correctional Officers were deliberately indifferent and completely without regard to Plaintiffs' health and safety.

138.    The Supervisory Defendants knew of and presently know of the substantial risk of serious harm to inmates posed by widespread and pervasive rape and other sexual abuses by Correctional Officers and other DOC staff against inmates. Such deliberate indifference to the ongoing and pervasive acts of sexual assault, including rape and sodomy, resulted in the coercive sexual relationship and rape of Plaintiffs and continues to pose a substantial risk of sexual assault to Plaintiffs and other DOC inmates.

139.    The Supervisory Defendants failed to and continue to fail to provide humane conditions of confinement for Plaintiffs and other similarly situated inmates by failing to implement practices, policies and procedures that protect inmates, including Plaintiffs, from the

26

substantial risk of serious harm posed by prison personnel using their authority and influence to sexually assault inmates.

140.    The Supervisory Defendants, by and through their official duties within the Colorado Department of Corrections, failed to and continue to fail to properly hire, train, supervise and/or discipline their employees regarding the protection of DOC inmates, including Plaintiffs, from sexual assault and rape, resulting in inhumane conditions of confinement and a deliberate indifference to the substantial risk of serious harm to Plaintiffs and other similarly situated inmates.

141.    The inadequate hiring, training and/or supervision provided by the Supervisory Defendants results from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendants.

142.    In light of the duties and responsibilities of the Colorado Department of Corrections personnel who exercise control over individuals incarcerated at DWCF and other facilities, the need for scrutiny in hiring and specialized training, supervision and discipline regarding sexual acts with inmates is so obvious, and the inadequacy of appropriate hiring, training and/or supervision is so likely to result in the violation of constitutional rights, such as those described herein, that the Supervisory Defendants are liable for their failure to appropriately hire, train, and/or supervise DOC personnel. Such failure to properly hire, train and supervise their employees was and continues to be the moving force and proximate cause of the violation of Plaintiffs' constitutional rights and the rights of other inmates.

143.    The acts or omissions of each Defendant were the legal and proximate cause of Plaintiffs' damages in that they each suffered physical injury, including physical intrusion into bodily privacy and integrity, humiliation, mental and emotional pain and anguish.

27

144.    The acts or omissions of each Defendant caused Plaintiffs damages in that they each suffered physical, mental and emotional pain and injury as described above, from which they will likely continue to suffer for the rest of their lives. As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, and/or practices described above, Plaintiffs suffered and continue to suffer injuries, damages and losses as set forth herein.

145.    Defendants' conduct in violating Plaintiffs' rights as described herein shocks the conscience and is intolerable to society's standards of fundamental fairness.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – 14th Amendment Substantive Due Process
### (Invasion of Bodily Integrity – Against All Defendants)

146.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

147.    Defendants were acting under color of state law in their actions and inactions which occurred at all times relevant to this action.

148.    By engaging in inherently coercive sexual acts with Plaintiffs, Defendant Correctional Officers recklessly, with conscious disregard to the serious and obvious risk to Plaintiffs' safety, and with deliberate indifference, violated Plaintiffs' constitutionally protected right to bodily integrity.

149.    The Supervisory Defendants recklessly, with conscious disregard to the serious and obvious risk to Plaintiffs' and other DOC inmates' safety, and with deliberate indifference violated and continue to violate Plaintiffs' and other inmates' constitutionally protected right to bodily integrity by allowing pervasive sexual assault and rape by prison personnel against inmates to continue in the following ways:

28

    a.  by employing Defendant Correctional Officers and other prison personnel in positions that allowed them unsupervised access to DOC inmates, with, and in spite of, the knowledge that prison personnel were and are sexual predators;

    b.  by failing to take any substantive remedial actions to address the known, ongoing, pervasive problem of sexual abuse by prison personnel against inmates;

    c.  by failing to properly hire, train, and/or supervise prison personnel to prevent and/or address pervasive sexual assault by Defendant Correctional Officers and other prison personnel against inmates, known to Supervisory Defendants; and,

    d.  by failing to maintain a proper video surveillance system in all locations where inmates are present.

150.    This conduct amounts to deliberate indifference to the rights of the inmates, including Plaintiffs, with whom prison personnel inevitably come into contact, and over whom prison personnel exercise control.

151.    The conduct is so grossly reckless that future misconduct was and is almost inevitable.

152.    When viewed in total, this conduct shocks the conscience.

153.    The acts and/or omissions of each Defendant were the legal and proximate cause of Plaintiffs' damages in that each suffered physical injury, including physical intrusion into bodily privacy and integrity, humiliation, mental and emotional pain and anguish.

154.    The Supervisory Defendants, by and through their official duties within the Colorado Department of Corrections, failed to and continue to fail to properly hire, train, supervise and/or discipline their employees regarding the protection of inmates, including Plaintiffs, from rape and sexual assault, resulting in an unconstitutional invasion of Plaintiffs'

bodily integrity and a deliberate indifference to the substantial risk of serious harm to Plaintiffs
and other similarly situated inmates.

155.   The inadequate hiring, training and/or supervision provided by the Supervisory
Defendants results from a conscious or deliberate choice to follow a course of action from
among various alternatives available to the Supervisory Defendants.

156.   In light of the duties and responsibilities of the Colorado Department of
Corrections personnel who exercise control over individuals incarcerated at DWCF and other
facilities, the need for scrutiny in hiring and specialized training, supervision and discipline
regarding sexual acts with DOC inmates is so obvious, and the inadequacy of appropriate hiring,
training and/or supervision is so likely to result in the violation of constitutional rights, such as
those described herein, that Supervisory Defendants are liable for their failure to appropriately
hire, train, and/or supervise DOC personnel. Such failure to properly hire, train and supervise
their employees was and continues to be the moving force and proximate cause of the violation
of Plaintiffs' and other inmates' constitutional right to bodily integrity.

157.   The Supervisory Defendants, by and through their official duties within the
Colorado Department of Corrections, proximately caused an unconstitutional invasion of
Plaintiffs' bodily integrity, as well as that of other inmates, by failing to implement practices,
policies and procedures that protect inmates, including Plaintiffs, from the substantial risk of
serious harm posed by prison personnel using (and abusing) their authority and influence to
sexually assault inmates.

158.   Such policies, as well as Defendants' actions and inactions violated Plaintiffs'
substantive due process right to bodily integrity under the Fourteenth Amendment to the United
States Constitution.

## THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – 14th Amendment Substantive Due Process
### (Failure to Protect – Against Supervisory Defendants)

159.   Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

160.   The Supervisory Defendants were acting under color of state law in their actions and inactions which occurred at all times relevant to this action.

161.   By incarcerating Plaintiffs and other similarly situated inmates, and thereby assuming control over the inmates and depriving them of their liberty to care for themselves, the Supervisory Defendants created a special relationship with Plaintiffs and other inmates that required the Supervisory Defendants to assume an affirmative duty of care and protection with respect to Plaintiffs and other inmates.

162.   The Supervisory Defendants recklessly and with conscious disregard to the serious and obvious risk to inmate safety, failed to protect Plaintiffs and other inmates from pervasive sexual assaults by prison personnel in the following ways:

      a.  by employing Defendant Correctional Officers and other prison personnel in positions that allowed them unsupervised access to DOC inmates, with, and in spite of, the knowledge that prison personnel were and are sexual predators;

      b.  by failing to take any substantive remedial actions to address the known, ongoing, pervasive problem of sexual abuse by prison personnel against inmates;

      c.  by failing to properly hire, train, and/or supervise prison personnel to prevent and/or address pervasive sexual assault by Defendant Correctional Officers and other prison personnel against inmates, known to Supervisory Defendants; and,

31

      d. failing to maintain a proper video surveillance system in all locations where inmates are present.

163. This conduct amounts to deliberate indifference to the rights of inmates, including Plaintiffs, with whom prison officials inevitably come into contact, and over whom prison officials exercise control.

164. The conduct is so grossly reckless that future misconduct was and is virtually inevitable.

165. When viewed in total, this conduct shocks the conscience.

166. The acts or omissions of each Supervisory Defendant were the legal and proximate cause of Plaintiffs' damages in that each suffered physical injury, including physical intrusion into bodily privacy and integrity, humiliation, mental and emotional pain and anguish.

167. The Supervisory Defendants, by and through their official duties within the Colorado Department of Corrections, failed to and continue to fail to properly hire, train, supervise and/or discipline their employees regarding the protection of inmates, including Plaintiffs, from rape and sexual assault, resulting in a constitutional failure to protect Plaintiffs from Defendant Correctional Officers' sexual assaults and a constitutional failure to protect other inmates from sexual assaults by prison personnel.

168. The inadequate hiring, training and/or supervision provided by the Supervisory Defendants results from a conscious or deliberate choice to follow a course of action from among various alternatives available to the Supervisory Defendants.

169. In light of the duties and responsibilities of the Colorado Department of Corrections personnel who exercise control over individuals incarcerated at DWCF and other DOC facilities, the need for scrutiny in hiring and specialized training, supervision and discipline

regarding sexual acts with inmates is so obvious, and the inadequacy of appropriate hiring, training and/or supervision is so likely to result in the violation of constitutional rights, such as those described herein, that the Supervisory Defendants are liable for their failure to appropriately hire, train, and/or supervise DOL personnel. Such failure to properly hire, train and supervise their employees was and continues to be the moving force and proximate cause of the violation of Plaintiffs' and other inmates' constitutional right to protection from prison personnel.

170.    The Supervisory Defendants, by and through their official duties within the Colorado Department of Corrections, proximately caused an unconstitutional invasion of Plaintiffs' bodily integrity, as well as that of other inmates, by failing to implement practices, policies and procedures that protect inmates, including Plaintiffs, from the substantial risk of serious harm posed by prison personnel using (and abusing) their authority and influence to sexually assault inmates.

171.    Such policies, as well as, Defendants' actions and inactions violated Plaintiffs' substantive due process right under the Fourteenth Amendments to the United States Constitution.

## FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – 14th Amendment Substantive Due Process
### (Danger Creation – Against Supervisory Defendants)

172.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

173.    The Supervisory Defendants were acting under color of state law in their actions and inactions which occurred at all times relevant to this action.

174.    The Supervisory Defendants created the danger that led to Defendant Correctional Officers' sexual assault of Plaintiffs and/or increased Plaintiffs' vulnerability to sexual assault and rape by the affirmative conduct of:

     a.  employing Defendant Correctional Officers and other prison personnel in positions that allowed them unsupervised access to DOC inmates, with, and in spite of, the knowledge that prison personnel were and are sexual predators;

     b.  by failing to take any substantive remedial actions to address the known, ongoing, pervasive problem of sexual abuse by prison personnel against inmates;

     c.  failing to properly hire, train, and/or supervise prison personnel to prevent and/or address pervasive sexual assault by Defendant Correctional Officers and other prison personnel against inmates, known to Supervisory Defendants; and,

     d.  failing to maintain a proper video surveillance system in all locations where inmates are present.

175.    The Supervisory Defendants created and continue to create a danger that has led and continues to lead to pervasive sexual assault by DOC prison personnel against female inmates by the affirmative conduct of:

     a.  continuing to employ prison personnel in positions that permit regular, unsupervised access to female inmates in spite of Supervisory Defendants' actual knowledge of pervasive sexual abuse perpetrated by many DOC guards and other officials against DOC inmates;

     b.  choosing not to take any substantive remedial action to address the known, ongoing, pervasive problem of sexual abuse by prison guards and officials against inmates;

       c. choosing not to properly hire, train, and/or supervise prison officials to prevent and/or address pervasive sexual assaults by prison guards and officials against inmates known to Supervisory Defendants; and,

       d. failing to maintain a proper video surveillance system in all locations where inmates are present.

176.    Plaintiffs and other inmates are members of a limited group of individuals at serious risk of sexual assault by Defendant Correctional Officers and other prison guards and officials.

177.    The conduct of the Supervisory Defendants placed and continues to place Plaintiffs and other inmates at substantial risk of serious, immediate, and proximate harm – namely, sexual assault and rape by prison guards and officials.

178.    By continuing to employ prison personnel in positions that allows them unsupervised access to DOC inmates, in spite of knowledge that numerous prison personnel were and are sexual predators, the Supervisory Defendants acted recklessly and in conscious disregard of that obvious risk.

179.    This conduct amounts to deliberate indifference to the rights of inmates, including Plaintiffs, with whom prison personnel inevitably come into contact, and over whom they exercise control.

180.    The conduct is so grossly reckless that future misconduct was and is virtually inevitable.

181.    When viewed in total, this conduct shocks the conscience.

182.    The acts or omissions of each Supervisory Defendant were the legal and proximate cause of Plaintiffs' damages in that each suffered extreme physical injury, including

physical intrusion into bodily privacy and integrity, humiliation, mental and emotional pain and anguish.

183.    The Supervisory Defendants, by and through their official duties within the Colorado Department of Corrections, failed to and continue to fail to properly hire, train, supervise and/or discipline their employees regarding the protection of inmates, including Plaintiffs, from rape and sexual assault, resulting in an unconstitutional creation of danger and a deliberate indifference to the substantial risk of serious harm to Plaintiffs and other inmates.

184.    The inadequate hiring, training and/or supervision provided by the Supervisory Defendants results from a conscious or deliberate choice to follow a course of action from among various alternatives available to the Supervisory Defendants.

185.    In light of the duties and responsibilities of the Colorado Department of Corrections officials who exercise control over individuals incarcerated at DWCF and other DOC facilities, the need for scrutiny in hiring and specialized training, supervision and discipline regarding sexual acts with inmates is so obvious, and the inadequacy of appropriate hiring, training and/or supervision is so likely to result in the violation of constitutional rights, such as those described herein, that the Supervisory Defendants are liable for their failure to appropriately hire, train, and/or supervise DOC personnel. Such failure to properly hire, train and supervise their employees was and continues to be the moving force and proximate cause of the violation of Plaintiffs' and other inmates' substantive due process rights.

186.    The Supervisory Defendants, by and through their official duties within the Colorado Department of Corrections, proximately caused an unconstitutional invasion of Plaintiffs' bodily integrity, as well as that of other inmates, by failing to implement practices, policies and procedures that protect inmates, including Plaintiffs, from the substantial risk of

36

serious harm posed by prison personnel using (and abusing) their authority and influence to sexually assault inmates.

187.    Such policies, as well as the Supervisory Defendants' actions and inactions violated Plaintiffs' substantive due process rights under the Fourteenth Amendment to the United States Constitution.

### FIFTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Failure to Train and Supervise
### (Against Supervisory Defendants)

188.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

189.    The venue within which the Plaintiffs were injured is a government function.

190.    Defendants sued in their individual capacity are all persons for the purposes of 42 U.S.C. § 1983 as regards damages sought.

191.    Defendants sued in official capacity for injunctive and declaratory relief are subject to 42 U.S.C. § 1983 for that relief sought.

192.    The Supervisory Defendants were responsible for the adequate training and supervision of the staff beneath them regarding maintaining the health, safety and wellbeing of incarcerated persons in the State of Colorado in the care and custody of Correctional Officers.

193.    The Supervisory Defendants knew that the failure to properly train and supervise the staff beneath them regarding policy and procedure for maintaining the health, safety and wellbeing of incarcerated persons in the State of Colorado in the care and custody of Correctional Officers would result in the deprivation of rights complained of herein.

194.    It was foreseeable there would be safety, civil rights and administrative violations to incarcerated persons in the State of Colorado in the care and custody of Correctional Officers.

37

195.    The Supervisory Defendants failed to adequately train or supervise the staff beneath them even though they knew, or had reason to know, that the failure to adequately hire, train and supervise the staff beneath them would result in the deprivation of rights complained of herein.

196.    The Supervisory Defendants maintained a deliberate indifference to the obvious safety needs of the Plaintiffs, knowing that potentially serious consequences could be suffered by the Plaintiffs because of their failing to properly hire, train and supervise the staff beneath them. The Supervisory Defendants could have and should have pursued reasonable methods for the training and supervising of such employees, but failed to do so.

197.    As a direct, legal and proximate result of the actions of the Supervisory Defendants complained of herein, Plaintiffs have suffered in the past and will continue to suffer in the future the injuries, damages and losses set forth in this Complaint.

**SIXTH CLAIM FOR RELIEF**
**Title 18 U.S.C. Part I, Chapter 77, et seq.**
**(Against All Defendants)**

198.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

199.    The Defendants perpetrated or knowingly benefited from participation in a venture which those persons knew or should have known engaged in an act in violation of Title 18 U.S.C. Part I, Chapter 77, et seq., and for which a civil remedy is provided pursuant to 18 U.S.C. § 1595.

200.    The Defendants perpetrated or knowingly benefited from participation in a venture which that person knew or should have known provided or obtained the aggravated sexual abuse of Plaintiffs.

201.   The aggravated sexual abuse of the Plaintiffs was provided or obtained:

    a.   by threats of serious harm to, or physical restraint against the Plaintiffs or other persons; or,

    b.   by means of a scheme, plan, or pattern intended to cause the Plaintiffs to believe that, if the Plaintiffs did not submit to the aggravated sexual abuse, the Plaintiffs or other persons would suffer serious harm or physical restraint; or,

    c.   by means of the abuse or threatened abuse of law or the legal process.

202.   The Defendants have otherwise violated Title 18 U.S.C. Part I, Chapter 77, et seq.

203.   As a direct, legal and proximate result of Defendants' actions complained of herein, each Plaintiff has suffered in the past and will continue to suffer in the future the injuries, damages and losses set forth in this Complaint.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and award them all relief as allowed by law, including but not limited to, the following:

    a.   Prospective injunctive and declaratory relief and other appropriate equitable relief;

    b.   Actual economic damages as established at trial;

    c.   Compensatory damages, including, but not limited to, those for future pecuniary losses, physical and emotional pain, suffering, inconvenience, humiliation, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

    d.   Punitive damages for all claims allowed by law in an amount to be determined at trial;

    e.   Pre-judgment and post-judgment interest at the highest lawful rate;

   f.   Attorney's fees and costs; and,

   g.   Such further relief as justice requires.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated:  January 15, 2011

/s/ Brad R. Irwin

Brad R. Irwin
Andrea L. Blanscet
Chris L. Ingold
Steven R. Barrett

IRWIN & BOESEN, P.C.
4100 E. Mississippi Avenue
Suite 1900
Denver, CO  80246
Telephone:  (303) 320-1911
Fax:  (303) 320-1915
Email:  birwin@coloradolawyers.com
Email:  ablanscet@coloradolawyers.com
Email:  cingold@coloradolawyers.com
Email:  sbarrett@coloradolawyers.com

ATTORNEYS FOR PLAINTIFFS