**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00112-REB-BNB

HEIDI JEWKES,
NATASHA SWENSON,

      Plaintiffs,
v.

C.O. THEODORE SHACKLETON, Correctional Officer at the Denver Women's Correctional Facility, in his individual capacity,

      Defendant.

**ORDER DENYING DEFENDANT'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW**

**Blackburn, J.**

      The matter before me is defendant Theodore Shackleton's oral motion for judgment as a matter of law under FED. R. CIV. P. 50. I deny the motion.

      This case was tried to a jury from August 6 through August 8, 2012. At the close of the plaintiffs' evidence, the defendant, Theodore Shakleton, made a motion for judgment as a matter of law under FED. R. CIV. P. 50(a). I resolved the motion on all issues raised by the defendant, except for the issue of exhaustion of administrative remedies. On that issue, I took the motion under advisement. At the close of the evidence, Mr. Shackleton renewed his prior motion for judgment as a matter of law as to the exhaustion of administrative remedies issue. I took the matter under advisement and submitted the case to the jury. On August 8, 2012, the jury returned verdicts in favor of both of the plaintiffs on their claims under the Eighth Amendment to the United States Constitution. The jury awarded 1,000 dollars in damages to each of the plaintiffs.

After entry of the verdicts, Mr. Shackleton filed **Defendant's Notice of Supplemental Authority** [#82][1], filed September 21, 2012, in support of his renewed Rule 50 motion. The plaintiff filed a response [#83].

## I. JURISDICTION

I have subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

A renewed motion for judgment as a matter of law post-verdict is determined under the same standards that govern resolution of a post-evidentiary motion for judgment as a matter of law under FED. R. CIV. P. 50(a). The "standard for granting summary judgment mirrors the standard for judgment as a matter law, such that 'the inquiry under each is the same.'" **Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133, 150 (2000) (quoting **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250-251 (1986)).

Motions under this rule "should be cautiously and sparingly granted." **Lucas v. Dover Corp.**, 857 F.2d 1397, 1400 (10th Cir. 1988) (citations omitted). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." **Reeves**, 120 S.Ct. at 2110. I cannot pass judgment on the credibility of witnesses or substitute my judgment for that of the jury. **Id.**; **see also Hinds v. General Motors Corp.**, 988 F.2d 1039, 1045 (10th Cir. 1993).

Thus, although the court should review the record as a whole, it must

---

[1] "[#82]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

2

> disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses."

*Reeves*, 120 S.Ct. at 2110 (quoting 9A C. Wright & A. Miller, *Federal Practice and Procedure* § 2529 at 300 (2nd ed. 1995)). Judgment as a matter of law is appropriate "only where the proof is all one way or so overwhelmingly preponderant in favor of the movant so as to permit no other rational conclusion." *Hinds*, 988 F.2d at 1045.

### III. ANALYSIS

The plaintiffs, Heidi Jewkes and Natasha Swenson, were incarcerated at the Denver Women's Correctional Facility (DWCF) during the incidents that constitute the bases of their claims in this case. The DWCF is operated by the Colorado Department of Corrections (CDOC). Both of the plaintiffs alleged in their complaint that the defendant, Theodore Shackleton, who was a correctional officer at DWCF, forced them to perform sex acts with him in June of 2009. Ms. Jewkes and Ms. Swenson filed suit against Mr. Shackleton, alleging violation of their rights under the Eighth Amendment.[2]

In his Rule 50 motion, Mr. Shackleton argued that the plaintiffs' claims are barred by 42 U.S.C. § 1997e because the plaintiffs failed properly to exhaust their administrative remedies before filing this lawsuit. Section 1997e is part of the Prison Litigation Reform Act (PLRA). Under § 1997e(a), "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative

---

[2] Of course, the Eighth Amendment is applicable to state actors, such as Mr. Shakleton, via the Due Process Clause of the 14th Amendment. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962).

3

remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

This issue was addressed also in the defendant's motion for summary judgment [#38]. In resolving the motion for summary judgment, I concluded that the evidence in the record showed that Ms. Jewkes and Ms. Swenson had exhausted their administrative remedies fully and properly. *Order* [#63] filed July 23, 2012. At trial, evidence was presented showing the actions taken by Ms. Jewkes and Ms. Swenson to exhaust their administrative remedies and the reaction of CDOC officials to those actions. Essentially, this evidence is the same evidence presented by Mr. Shackleton in support of his motion for summary judgment.

The CDOC requires prisoners to complete a three step grievance process in order to exhaust their administrative remedies. See CDOC Admin. Reg. No. 850-04 § IV(H)(1)(a-c). Under the applicable regulation, a prisoner may file a step 1 grievance within 30 calendar days of the date she knew of the facts giving rise to her grievance. CDOC Admin. Reg. No. 850-04 § IV(I)(1)(a). A response is due from the CDOC within twenty-five days after receipt of the step 1 grievance. CDOC Admin. Reg. No. 850-04 § IV(I)(1)(a). The prisoner, after receiving a response to step 1, then has five days to file a step 2 grievance. CDOC Admin. Reg. No. 850-04 § IV(I)(1)(c). The CDOC has another twenty-five days to respond to the step 2 grievance. After the step 2 response, the prisoner has five days to file a step 3 grievance, and the CDOC then has forty-five days to issue a final response. CDOC Admin. Reg. No. 850-04 § IV(I)(1)(b-c).

The evidence presented at trial shows that Ms. Jewkes filed her step 1 grievance on July 29, 2009, more than thirty days after June 17, 2009, the date on which she says

she was sexually assaulted by Mr. Shakleton. *Exhibit 2.*[3] Even though the July 29, 2009, grievance was untimely, the CDOC employee reviewing the grievance did not deny it on the basis of untimely filing. Rather, the CDOC responded substantively, saying the case was "being dealt with by the Denver Police Department, Sexual Assault unit" and that it was being treated as "a priority case." *Id.* Ms. Jewkes then filed a timely step 2 grievance and received a substantive response indicating that the matter was "under active investigation" and that it continued to be a "priority case." *Exhibit 3*. Finally, Ms. Jewkes filed a timely step 3 grievance and received a substantive response expressly indicating she had "exhausted [her] administrative remedies." *Exhibits 4 & 5.* At no point in the grievance process concerning Ms. Jewkes' grievance did the CDOC raise the issue of the timeliness of Ms. Jewke's step 1 grievance.

The evidence presented at trial shows that Ms. Swenson filed her step 1 grievance on July 28, 2009, more than thirty days after June 20, 2009, the date on which she says she was sexually assaulted by Mr. Shakleton. *Exhibit 19*. Even though the July 29, 2009 grievance was untimely, the CDOC employee reviewing her grievance did not deny it on the basis of untimely filing. *Id.* Ms. Swenson then filed a timely step 2 grievance, and received a substantive response indicating that the matter was "under active investigation." *Exhibit 20*. Finally, Ms. Swenson filed a timely step 3 grievance and received a substantive response expressly indicating she had "exhausted [her] administrative remedies." *Exhibits 21 & 22*. In all significant respects, Ms. Swenson's progress through the grievance process was identical to that of Ms. Jewkes.

Mr. Shackleton argues that the failure of Ms. Jewkes and Ms. Swenson to file

---

[3] All citations to exhibits refer to exhibits admitted in evidence at trial.

5

their step 1 grievances within thirty days of the incidents addressed in those grievances bars their claims in this case because their step 1 grievances were not timely under the applicable CDOC regulations. According to Mr. Shackleton, the plaintiffs did not properly exhaust their administrative remedies and, therefore, the plaintiffs' claims are barred under § 1997e(a) as a matter of law .

Mr. Shackleton notes Supreme Court precedent holding that, in order to properly exhaust administrative remedies, prisoners "must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." ***Woodford v. Ngo***, 548 U.S. 81, 88 (2006). However, the facts of ***Woodford*** differ importantly from those in this case. In ***Woodford***, the prisoner filed a grievance approximately six months after the deadline for filing such a grievance had passed. ***Woodford***, 548 U.S. at 87. The grievance was rejected as untimely and the prisoner appealed that decision, in administrative proceedings, without success. ***Id.*** The issue for the Court was whether the prisoner had exhausted his administrative remedies because, after his untimely grievance was rejected, no further administrative remedies were available. ***Id.*** The Court held that "the PLRA exhaustion requirement requires proper exhaustion." ***Id.*** at 93. It reasoned that "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." ***Id.*** at 94.

Mr. Shackelton cites also ***Jones v. Bock***, 549 U.S. 199 (2007), in which the Supreme Court held "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . -rules that are defined not by the PLRA, but by the prison

6

grievance process itself." *Id*. at 218 (quoting *Woodford*, 548 U.S. at 88). Under the PLRA, each jail, prison, or department of corrections is left to define the rules of its grievance process. In addition, each jail, prison, or department of corrections is left to administer its own grievance process and to enforce the rules of the grievance process it created.

When addressing Ms. Jewkes and Ms. Swenson's grievances, the CDOC failed to enforce the timeliness requirement established in CDOC regulations. Rather than enforce the timeliness requirement, the CDOC processed the plaintiffs' grievances, addressed the issues on the merits, and, ultimately, informed the plaintiffs that they had exhausted their administrative remedies. "If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court." *Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), *abrogated on otr. grounds by Jones v. Bock*, 549 U.S. 199 (2007) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). Four other circuit courts of appeal, applying the requirements of § 1997e(a), have reached the same conclusion. *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012); *Hill v. Curcione*, 657 F.3d 116, 125 (2d Cir.2011); *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 - 25 (6th Cir.2010); *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir.2005). Given the holding in *Ross*, I am constrained to conclude that both Ms. Jewkes and Ms. Swenson fully exhausted their administrative remedies before filing this suit.

Mr. Shackleton argues that the court cannot conclude properly that the CDOC waived the untimeliness of the plaintiffs' grievances on behalf of Mr. Shakleton. Waiver

is the intentional relinquishment or abandonment of a known right. *See, e.g., United States v. Olano*, 507 U.S. 725, 733 (1993). The evidence in the record does not show that the CDOC's failure to enforce the timeliness requirement as to Ms. Jewkes and Ms. Swenson was intentional. Thus, I cannot conclude that the CDOC waived the enforcement of the timeliness requirement.

Contrastingly, forfeiture is the failure to make a timely assertion of a right. *Id*. "[W]aiver is accomplished by intent, but forfeiture comes about through neglect." *U.S. v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir.2007) (internal quotation and brackets omitted). Forfeiture, as opposed to waiver, occurs "when there is no suggestion of a knowing, voluntary failure to raise the matter." *U.S. v. Goode*, 483 F.3d 676, 681 (10th Cir.2007). In this case, the CDOC failed to mention or enforce the timeliness limitations of its grievance process, through all three steps of that process. Based on that failure, I conclude that the CDOC forfeited its right to enforce the timeliness requirement as to Ms. Jewkes and Ms. Swenson's grievances. Given the undisputed facts in the record, I conclude that CDOC forfeited its right to enforce the timeliness requirement. Given the holding in *Ross*, I conclude that both Ms. Jewkes and Ms. Swenson fully exhausted their administrative remedies before filing this suit.

Mr. Shackleton argues that it is not proper to conclude that the CDOC waived, on Mr. Shackleton's behalf, the exhaustion of administrative remedies requirement. Generally, the cases cited by Mr. Shackleton in his notice of supplemental authority [#82] concern invalid and unauthorized waivers by agents and others in similar positions. In essence, Mr. Shackleton argues that the CDOC did not have the authority to waive enforcement of the CDOC grievance rules to the extent enforcement of those

rules might benefit Mr. Shackleton.  Presumably, Mr. Shakleton contends also that the CDOC cannot forfeit enforcement of the grievance rules on his behalf.  I disagree.

As interpreted by the United States Supreme Court, the exhaustion requirement of § 1997e(a) is designed to serve certain specific purposes:

> We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.

*Jones v. Bock*, 549 U.S. 199, 219 (2007) (*citing Woodford v. Ngo*, 548 U.S. 81, 88 - 91 (2006) and *Porter v. Nussle*, 534 U.S. 516 (2002)).  Stated simply, the key purpose of the exhaustion requirement is to ensure that "the prison grievance system is given a fair opportunity to consider the grievance."  *Woodford*, 548 U.S. at 94.  Personal notice to individuals who might later be sued based on an incident addressed in a grievance generally is not a primary purpose of the exhaustion requirement mandated in § 1997e(a).  *Jones*, 549 U.S. at 219 (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

Under § 1997e(a) and the applicable CDOC regulations, Mr. Shakleton does not have the ability or the right to control the processing of a grievance, even if the grievance is related to actions taken by Mr. Shakleton.  The CDOC devised its own grievance process and, as designed, that process does not include any regulations or procedures which serve the purpose of notifying a potential individual defendant or the purpose of permitting such a defendant to participate in or control the resolution of the grievance.  In short, under the applicable law and regulations, the CDOC has exclusive control of the enforcement of its grievance rules.  Mr. Shakleton may not insist on

enforcement of the CDOC grievance rules when the CDOC has not insisted on enforcement of its grievance rules. Rather, if the CDOC forfeits enforcement of certain of its grievance procedures, and processes a grievance despite a deviation from the rules, Mr. Shakleton is bound by that forfeiture.

## IV. CONCLUSION & ORDERS

I have reviewed all of the evidence presented at trial to the extent that evidence is relevant to the unresolved issue raised in the defendant's Rule 50 motion. The facts relevant to the motion are undisputed. Therefore, the defendant's motion presents a question of law. Given the undisputed facts in the record concerning the CDOC's processing of the grievances of Ms. Jewkes and Ms. Shakleton, I find and conclude that both Ms. Jewkes and Ms. Swenson fully exhausted their administrative remedies before filing this suit. The CDOC's failure to enforce fully the timeliness requirement of its grievance procedure does not bar Ms. Jewkes and Ms. Swenson from asserting in this case their claims against Mr. Shakleton.

**THEREFORE, IT IS ORDERED** as follows:

1. That defendant Theodore Shackleton's motion for judgment as a matter of law under FED. R. CIV. P. 50, which was asserted in open court at the close of the evidence during the trial of this case, is **DENIED**;

2. That **JUDGMENT SHALL ENTER** in favor of the plaintiffs, Heidi Jewkes and Natasha Swenson, and against the defendant, Theodore Shackleton, as to the plaintiff's claims for damages under the Eighth Amendment, as found by the jury in this case, whose verdicts were read into the record in open court on August 8, 2012 (*see* **Courtroom Minutes** [#80-7 & #80-8] filed August 8, 2012;

3.  That the plaintiffs are **AWARDED** their costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

4.  That any post-trial motions, including any motion for an award of attorney fees, **SHALL BE FILED** on or before November 12, 2012; and

5.  Responses and replies to any post-trial motions shall be marshaled under D.C.COLO.LCivR 7.1C.

Dated October 29, 2012, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge